**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**

_____

| | |
|---|---|
| In re: | ) |
| | ) |
| PATRINA CUTHBERTSON | )   Case No. 18-12627 |
| | )   Chapter 13 |
| Debtor | ) |
|_____ | ) |

### REPLY ON OBJECTION TO CLAIM OF COMPTROLLER OF MARYLAND [Cl. Dkt. 23]) OR IN THE ALTERNATIVE TO RECONCILE CLAIMS 22; 23 AND LIEN ASSERTED BY CLAIMANT

PATRINA CUTHBERTSON (the "Debtor") hereby files this Reply on Objection to Claim Dkt. 23 of Comptroller of Maryland Or In the Alternative To Reconcile Claims 22, 23 and Lien Asserted By Claimant (the "Reply"), and states as follows:

### FACTUAL STATEMENT:

This contested matter involves an Objection to Claim [Dkt. 52] filed on August 27, 2019 by the Debtor which identified a problematic disconnect between the judgment lien which the Comptroller had obtained pre-petition against the Debtor in the Circuit Court (referenced in the Objection as the *"Debtor's Claim" [Dkt. 22])*, and the filed "*Comptroller's Claim" [Dkt. 23]* as referenced in the Objection filed by the Comptroller filed on August 23, 2018.

The issue presented by the Objection was twofold; namely, on a basic practical level whether the Debtor's Claim which attached a judgment lien obtained by the Comptroller should prevail for treatment in a Plan which was confirmed and incorporated such treatment [See, Dkt. 35; ¶ 4.6.2], or whether the Comptroller's Claim as an unsecured claim should prevail.

Secondly, whether there were circumstances in the filing of the Comptroller's

Claim in this case (and others), where the Comptroller files an unsecured claim and actually has a lien of record in the Circuit Court without revealing the existence such a lien to the Bankruptcy Court, or releasing the judgment lien upon filing its Claim. That raises issues of bad faith, and how the Comptroller is tracking and applying payments when it has an undisclosed *in rem* lien with accruing statutory interest and the Comptroller is somehow applying payments simultaneously on an unsecured basis.  Indeed, it begs the question why the Comptroller if it truly wished to only pursue unsecured claims in bankruptcy does not release its lien upon the filing of its proofs of claim as would be appropriate, and how it polices the release of lien (other than some later request by some observant debtor seeking the lien to be stricken or satisfied).

On September 26, 2019, the Comptroller filed a Response to the Objection [Dkt. 56]. Therein, it posits that the Comptroller "relies upon the priority status or the general unsecured status to the filing of claims."  *Resp. at p. 1*  The Response continues that "*[a]t the completion of the bankruptcy, and if the Debtor receives a discharge, all years (tax liabilities) that are eligible for discharge are written off and the accompanying lien(s), if any. are released as Satisfied as well.  This treatment applies to priority and unsecured debts as well*."  *Resp. at p. 1*  No evidence of this practice of "write offs" is enclosed by the Comptroller with the Response.

Notably, Claim Docket 23 in this case has no language disclosing the existence of a judgment lien in favor of the Comptroller, nor does the Comptroller attach such documentation as is required.

This "*ad hoc" sub rosa* policy of claim treatment by the Comptroller leaves many questions unanswered, such as what the Comptroller does in a case where the Debtor is ineligible for a discharge, and it holds a lien judgment.  Does the Comptroller forgive the lien upon filing of the proof of claim?  Or does the lien emerge anew post-dismissal or close out of the non-

discharged bankruptcy, with the Debtor thereby prejudiced by ambiguity.  What happens in dismissed cases, and how has money paid into the Plan been applied by the Comptroller upon receipt after dismissal?   What methods are there of disclosing all of this to the Bankruptcy Court – at any time ever - in any prior cases?

This is also troubling because as in this case a Chapter 13 Plan was confirmed in reliance upon the lien of record and the secured treatment provided for in the confirmed Plan received no objection or attention from the Comptroller.  There appears no evidence of a release of lien on the Maryland Judiciary concerning this case.  What evidence is there that a lien was marked on the Court Docket as "Satisfied" or "released" in every single bankruptcy case in which the Comptroller has filed a priority/unsecured claim?

This needs to be seriously investigated as it is presently merely an unsupported excuse or justification espoused by the Comptroller.  The lack of transparency by the Comptroller herein and the comfort it lays upon its unsupervised internal *ad hoc* practices of claim administration is troubling.

The Comptroller Claim filed herein itself is revealing.  Specifically, the Court will note as observed above that there is no disclosure  – absolutely none – of a judgment lien or security interest to the Bankruptcy Court anywhere in the Comptroller Claim. [Dkt. 23]

However, in a pending Chapter 11 case; namely, *In re Wright* (Case No. 18-17725) where the undersigned serves as counsel, the Comptroller has filed a priority/unsecured proof of claim [Cl. Dkt. 11] which states under the penalty of perjury at p. 1 of 1 that "*No judgment has been rendered on and no security interest is held for this claim[.]*"  Cl. Dkt. 11 p. 1 of 1.

This representation of fact is scribed literally just above the **bolded** line which states ***"Penalty for Presenting Fraudulent Claim:*** *Fine up to $500,000.00 or Imprisonment for up to 5 years or both.  (18 U.S.C. Sections 152 and 3571)."  See*, Cl. Dkt. 11.

However, this representation of fact by the Comptroller is not true.  A title report obtained in connection with the forthcoming Plan confirmation now demonstrates that the Comptroller of Maryland *has not just one but two lien judgments or record*, totaling $5,902.82 and $4,457.13.  At no time does the title report reveal or demonstrate a prior satisfaction or withdrawal of these judgment liens.  A copy of the Cl. Dkt. 11 and the Title Report judgment sheet are attached hereto as ***Exhibit 1*** and ***Exhibit 2*** respectively.  Notably, there is no release that the undersigned can find in the Maryland Judiciary for these two liens of record in Prince George's County, MD.

At a minimum this demonstrates that the Comptroller has no idea what open judgment liens it has of record in connection with the administration of its pending bankruptcy cases and proof of claim submissions.  It may at worse demonstrate further a willful reckless disregard for the truth and failure to disclose to the Bankruptcy Court accurate and complete facts concerning the security interest and liens it holds in testimonial filings.  Obviously, it is a violation of Fed. R. Bankr. P. 3001(c)(1) as set forth below.

These incongruities in connection with the existence of perhaps ***thousands and thousands of liens*** surely lie dormant like a sleeping roadside IED for a putative wandering debtor to step on, only to find later in a credit application that some day in the future there is a ghost lien pending, much to his or her detriment.  If the Comptroller does not know in its testimonial filings what liens it has or does not have, how should the Debtor know after paying on his "priority/unsecured claim" to the Comptroller?  How is the Comptroller tracking payment

on these liens, and then converting such payment crediting systems to priority or unsecured claims, and starting balances?  There are incongruities that require and mandate disclosure of the existence of a judgment lien by the Comptroller *in its proof of claim filings* (particularly where the foregoing example demonstrates fallacious testimony being placed before the Court on the existence of a judgment lien).  This should not be hidden for someone to stumble upon later.

   For the Comptroller to say that it somehow figures all these incongruities out without any disclosure to the Bankruptcy Court by complete attachment and description on the proofs of claim and to the Maryland Judiciary by filings of releases concurrent with the proof of claim filings is a disservice to the State of Maryland, and the citizens of this State.  It is also a reckless extrinsic fraud upon the Bankruptcy Court.

   The Comptroller urges in this Chapter 13 case that its Cl. Dkt. 23 be accepted as the proof of claim for treatment under the confirmed Plan, subject now to modification.  The Debtor accepts that it will receive Cl. Dkt. 23 for purposes of the modified Plan and shall withdraw and strike both Cl. Dkt. 22 but also require an immediate Order Striking Judgment Lien relative to the errant lien of record remaining dormant and pending on the Prince George's County Docket.

   The Debtor however believes for the following reasons that sanctions and further relief should enure against the Comptroller for what amounts to a potential massive failure of disclosure upon the Bankruptcy Court in the Comptroller's proofs of claim filed in this district. That shall be taken up separately by Show Cause Motion, and is preserved in the prayer for relief in this filing.

## DISCUSSION:

The Comptroller urges in its response that its failure to identify or assert its judgment liens in its filed testimonial proofs of claims is "no foul no harm" relying upon *In re Bailey*, 664 F.3d 1026 (6th Cir. 2011).  This is misplaced reasoning by the Comptroller.  In *Bailey*, the Court voided a reaffirmation agreement because there had been a mistaken premise of fact that the relevant bank had a lien on a home and a truck, when it did not.

Correctly, the Sixth Circuit surmised from long standing case law that:

> Generally speaking, a secured creditor: (1) "may disregard the bankruptcy proceeding," subject to the provisions of 11 U.S.C. § 362(a), "and rely solely upon his security"; (2) may file a secured claim with the bankruptcy court; (3) may "*surrender or waive his security* and prove his entire claim as an unsecured one"; or (4) may "avail himself of his security and share in the general assets [of the bankruptcy estate] as to the unsecured balance" of the debt.

*In re Bailey*, 664 F.3d at 1029 (emphasis supplied), citing to *U.S. Nat'l Bank in Johnstown v. Chase Nat'l Bank of N.Y.C.*, 331 U.S. 28, 35 (1947).

No dispute exists over the impact over the *quasi estoppel* impact of the Comptroller filing its proofs of claim as priority or unsecured and being contemporaneously compelled to forfeit its liens.  "The doctrines of *quasi estoppel* and duty of consistency" have been in long existence.  *McMillan v. United States*, 1964 U.S. Dist. LEXIS 8527,  p.6 (S.D.W.V. 1964).  "*Quasi estoppel* forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid the corresponding obligations or effects."  *In re Robb*, 23 F.3d 895, 898 (4th Cir. 1994).

The difficulty in the practices – intentional or unintentional – of the Comptroller involve the *failure to truthfully disclose the existence of* judgment liens under penalty of perjury filings and to contemporaneously append to its proofs of claim the judgment liens which it is disavowing and/or releasing.  Moreover, if the Comptroller is proceeding as a priority or

unsecured claim, then the forfeiture of the judgment lien and affirmative steps to enroll *that release or satisfaction should accompany the filing of the proof of claim.*  Such a judgment lien should not precipitously dangle suspended by a single strand of frayed hair from the precipice shrouded in darkness and awaiting to fall upon the unsuspecting erstwhile debtor's head some day in the future like the Sword of Damocles[1].

Noting the instant irrevocability of an election to proceed as an unsecured claim rather than one holding security, the Sixth Circuit continued that "[o]nce he selects one of these options, *he may not disavow that choice* and proceed down a different path. In particular, 'participation by a secured creditor in distributions from the general assets [of the bankruptcy estate] on the basis of his full claim [generally] *indicates a waiver of the security* and an election to be treated as an unsecured creditor.'" *Bailey*, 664 F.3d at 1029 (emphasis supplied).

Stated otherwise, a decision to proceed as an unsecured claim is irrevocable as the Comptroller "waives it in favor of the estate, and cannot, after adjudication, assert it."  *Id.* Accordingly, awaiting a discharge or "completion of the bankruptcy case" whatever that may mean in this context is simply preserving an undisclosed judgment lien for later enforcement, rather than forfeiting it irrevocably upon the filing and choice to proceed as an unsecured claim. Or it may be simple inattention to what must and should be done in the filing of thousands of proofs of claim in this district.

Indeed, the United States District Court for the Western District of Virginia has observed that the filing of an unsecured claim where the creditor holds a fully secured claim may run afoul of sanctionable conduct under Rule 9011 for misrepresentation where the secured claim is not concurrently forfeited or avoided:

---

[1] The problem with the Sword of Damocles is not that it falls, but that it hangs over one's head.  Cicero "*Tusculan Disputations*" 45 B.C.

Here, the secured Creditors did not fail to file a proof of a claim. Instead, the Creditors chose to participate in the bankruptcy proceedings, albeit through the filing of an unsecured proof of claim. Under the Debtor's payment plan as confirmed by the Bankruptcy Court, the Claim will be paid in full, although without interest, through distributions from the Trustee. The Creditors gained this right to payment through the bankruptcy plan by participating in the proceedings, and § 506(d) requires their lien be avoided now that they have successfully availed themselves of such benefits.

Given the Creditors lack of participation at the Bankruptcy Court and on appeal here, it is unknown why the Claim was filed as unsecured. In a recent, somewhat similar case in the Bankruptcy Court for the Western District of Virginia, a creditor acknowledged that it had intentionally filed an unsecured claim as part of the debtor's bankruptcy proceedings, while still holding a perfected deed of trust securing a lien against the debtor's property. *In re Burnette,* No. 11–71622, at 2 (Bankr.W.D.Va. November 18, 2011). In disallowing the claim as an obstacle to the debtor's ability to confirm a bankruptcy plan under which his creditors could be paid in full, *the bankruptcy judge noted that "the intentional filing of an unsecured claim by the creditor which in fact has a fully secured claim and is being so treated in the Plan may violate the provisions of Federal Rule of Bankruptcy Procedure 9011(b)(1), (2) and (4) and subject the creditor to possible sanctions." Id.* Whatever the Creditors' reasons for filing an unsecured claim in this case, the Code does not entitle them to payment of their claim through distributions under the bankruptcy plan, while still retaining their secured judicial lien; in other words, they cannot have it both ways. The court determines that, because the Creditors filed an allowed proof of claim under § 501, the exception to the avoidance requirement in § 506(d)(2) does not apply in this case, and the lien should have been avoided.

*White v. FIA Card Svcs, NA* 494 B.R. 227, 230-231 (W.D. Va. 2012).

Thus, the issue herein that all of these swirling facts and premises must be inevitably drawn to is the requirements and sanctions provided for by Fed. R. Bankr. P. 3001(c)(1), (2), which provide in relevant part that:

(1) *Claim Based on a Writing.* Except for a claim governed by paragraph (3) of this subdivision, when a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of

> claim.  If the writing has been lost or destroyed, a statement of
> the circumstances of the loss or destruction shall be filed with
> the claim. . . .
>
> (2)(D)  If the holder of a claim fails to provide any information
> required by this subdivision (c), the court may, after notice
> and hearing, take either or both of the following actions: . . . (ii)
> award other appropriate relief, including reasonable expenses
> and attorney's fees caused by the failure.

Fed. R. Bankr. P. 3001(c)(1), (2) (2019)

A violation of Fed. R. Bankr. P. 3001(c) must allege "a plausible risk of harm" should demonstrate a "material and not merely a technical violation of the rule." *Thomas v. Midland Funding*, *LLC (In re Thomas),* 578 B.R. 355, 362 (Bankr. W.D. Va. 2017).  Here, the Debtor contends that the Comptroller has violated Bankruptcy Rule 3001(c) by failing to denote the existence of a judgment lien and to specifically include "a copy of the writing" with the proof of claim; and, if the secured claim and judgment lien have been forfeit, then proof of that satisfaction or release.  These allegations are indisputable.

As noted in the *Wright* matter, *supra*, the Comptroller goes a step further and files a proof of claim that **specifically denies under oath** the existence of a judgment lien or security interest, where *two judgment liens* feature prominently on the title report.  This is not a mere technical violation by the Comptroller of Bankruptcy Rule 3001(c)(1).  Rebuttal to the *prima facie* validity of the Comptroller's Claim by Debtor has been established. *See,* Fed. R. Bankr. P. 3001(f).

It should not be for the hapless debtor to forage about attempting to "pin the tail on the donkey" posthumously to figure out what to do about a pending but unreleased judgment lien, or perhaps more than one lien, from the Comptroller.  There can be no serious dispute that the Comptroller is materially ignoring or willfully disregarding its duties and requirements as to

judgment liens relating to the obligations imposed under Bankruptcy Rule 3001(c)(1).  As noted by *Thomas et al v. Midland Funding, LLC (In Re Thomas),* Adv. No. 17-0510 p.15 (09/28/18) when a plausible claim is stated under Fed. R. Bankr. P. 3001(c), "[f]or the Court to hold that a debtor has no right to the relief specifically provided in Rule 3001 would require the Court to ignore the language in the Rule or insert terms not present."

Debtor recognizes that as this Bankruptcy Court has previously noted under the wizened pen of the Hon. L. Simpson that "[t]he imposition of sanctions under Rule 3001(c)(2)(D) is permissive and entirely within the Court's discretion." *In re Isherwood & Lewis*, Case No. 18-10761-LSS p.8 (02/20/19) (disallowing sanctions because debtors merely asserted no answers were provided to inquiries under Fed. R. Bankr. P. 3001(c)(3)(B) rather than attacking the integrity of the claim filing itself).  Debtor believes she has met her burden to sanctions for attorneys fees and costs against the Comptroller herein.

No memorandum is filed herewith pursuant to Local Rule 9013-2.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order:

(i)     Granting the Objection;

(ii)    Allowing Claim Docket 23 upon a striking of the Comptroller's Judgment Lien as released;

(iii)   Withdrawing Claim Docket 22 upon satisfaction of the striking of the Comptroller's Judgment Lien and evidence thereof;

(iv)    Granting attorneys fees and costs against the Comptroller for this contested matter and its proceedings to be submitted by counsel;

(v)     Reserving such further injunction and declaratory relief to a show cause on joinder of multiple parties; and

(vi)     Granting such other and further relief as equity and justice may require.

RESPECTFULLY SUBMITTED,

-------/S/ John D. Burns -------
_____
John D. Burns, Esq. (#22777)
The Burns Law Firm, LLC
6303 Ivy Lane, Suite 102
Greenbelt, MD  20770
(301) 441-8780
*info@burnsbankruptccyfirm.com*
Counsel for the Debtor

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on this 11th day of October, 2019, a copy of the foregoing Reply and Exhibits were served via first-class mail, postage prepaid (or by ECF to those registered recipients), upon:

<u>VIA ECF:</u>
Office of the United States Trustee
6305 Ivy Lane, Suite 600
Greenbelt, MD  20770

Timothy P. Branigan, Chapter 13 Trustee
9891 Broken Land Parkway, Suite 301
Columbia, MD  21046

Kimberly B. Stephens, Esquire
Compliance Division Ste. 410
301 W. Preston Street
Baltimore, MD 21201

        RESPECTFULLY SUBMITTED,
        -------/S/ John D. Burns -------
        _____
        John D. Burns, Esq. (#22777)